```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
JAMES PAPA,                              :    25cv3788 (DLC)
                                         :
                        Plaintiff,       :    OPINION AND
                                         :       ORDER
            -v-                          :
                                         :
COMPUTACENTER UNITED STATES INC., et     :
al.,                                     :
                                         :
                        Defendants.      :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff:

Christopher Brennan
Ziegler, Ziegler & Associates LLP
570 Lexington Avenue, 24th Floor
New York, NY 10022

For defendant Computacenter United States Inc.:

Stephen W. Kelkenberg
Erin J. McLaughlin
Ryan J. Wilk
Buchanan Ingersoll & Rooney PC
501 Grant Street, Suite 200
Pittsburgh, PA 15219

For defendants Deutsche Bank Securities, Inc., DB USA
Corporation, and Deutsche Bank AG:

Lloyd B. Chinn
P. Kramer Rice
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036

DENISE COTE, District Judge:

Plaintiff James Papa filed this action in New York state court, bringing claims against Computacenter United States Inc. ("CC"), Deutsche Bank Securities, Inc., DB USA Corporation, Deutsche Bank AG (collectively, "DB"), and Marc Senatore.  CC and DB removed this action to federal district court, asserting that diversity provides a basis for jurisdiction.  Papa has moved to remand this action to New York state court.  Because Senatore's presence in this action defeats diversity jurisdiction, Papa's motion is granted.

## Background

The following facts are alleged in the complaint.  In May 2022, Papa began employment at CC, a company that operates datacenters for its clients.  Papa supervised a team of CC employees who were assigned to the corporate headquarters of DB, a major financial institution.  This team of CC employees operated DB's "technology rooms," which store large amounts of banking information and other private financial information.

Under the terms of the contract between CC and DB, Papa reported to Senatore, a vice president at DB, and ensured that CC delivered IT services requested by Senatore.  Senatore exercised significant control over the CC team assigned to DB

headquarters and could order CC to hire and retain members of that team.

In March 2023, Papa learned that a CC employee (the "Employee") had brought his girlfriend, "Jenny," into DB's technology rooms. Neither CC nor DB had authorized Jenny to be there. Despite this being a violation of DB's security protocols, members of DB's security staff had let Jenny in. Papa instructed the Employee not to bring Jenny to DB's headquarters again, even if permitted by DB's security staff. On June 2, 2023, however, Papa learned that Jenny had again entered DB's technology rooms with the Employee in the preceding weeks, having again been let in by DB security staff. Papa also learned that Jenny had accessed a CC laptop while it was logged in to DB's computer network.

Papa relayed this information to his superiors at CC, who instructed him to prepare a report. After Papa submitted a report to CC and DB, he was called into a meeting with lawyers from CC and DB. He was informed that his employment at CC was suspended until further notice. On July 31, 2023, Papa was informed that he was being fired by CC at the direction of DB, including Senatore.

Papa asserts five claims under New York law. Four of them include Senatore as a named defendant. They are a claim against

3

DB and Senatore of whistleblower retaliation in violation of New York Labor Law ("NYLL") § 740; a claim against DB and Senatore of tortious interference with Papa's business relationship with CC; a claim of negligence against DB and Senatore; and a claim against all defendants of conspiracy to tortiously interfere with his business relationship with CC.

Papa and Senatore are both residents of New Jersey. As explained below, Senatore's presence in this action destroys diversity.

On May 5, 2025, the plaintiff filed the complaint in New York State Supreme Court, County of New York. CC and DB filed a notice of removal in this Court on May 6, before the DB defendants were served on May 7.[1] On May 7, CC filed a notice of the removal in New York state court.

In letters of May 12 and May 14, Papa requested that this action be remanded to New York state court.[2] Papa argued in those letters that the removal had been procedurally defective

---

[1] DB is headquartered in New York. Removal under these circumstances is commonly referred to as "snap removal." It must be executed before in-state defendants are served because the forum defendant rule bars removal based on diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2); see Gibbons v. Bristol-Myers Squibb Co., 919 F.3d 699, 704-07 (2d Cir. 2019).

[2] A motion to remand, 28 U.S.C. § 1447(c), cannot be brought by letter in this District. See Local Civ. R. 7.1.

because Senatore had been omitted from the caption in the May 7 notice of removal filed in New York state court. In a letter of May 14, CC described that omission as a "scrivener's error."

On May 28, CC and DB filed separate motions to compel arbitration or, in the alternative, dismiss this action pursuant to Rule 12(b)(6), Fed. R. Civ. P. Those motions are due to be fully submitted on August 14.

On June 4, Papa filed a motion to remand this action to New York state court. Papa argues that the removal of this action was procedurally improper and that Senatore's presence as a defendant prevents complete diversity among the parties. CC filed an opposition on June 20 that argues, among other things, that Senatore was fraudulently joined to defeat diversity jurisdiction. In a June 20 filing, DB adopted the arguments in CC's opposition. Papa filed a reply on June 27.

## Discussion

Not all actions may be removed from state court to federal court. 28 U.S.C. § 1441(a) states:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court <u>of which the district courts of the United States have original jurisdiction</u>, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

5

(Emphasis supplied). The party asserting federal jurisdiction bears the burden of establishing that jurisdiction exists, including in the removal context. See Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc., 943 F.3d 613, 617 (2d Cir. 2019) (citation omitted). Moreover, a federal court has an independent obligation to satisfy itself of its jurisdiction, even in the absence of a challenge from any party. Stafford v. Int'l Bus. Machines Corp., 78 F.4th 62, 68 (2d Cir. 2023); see also 28 U.S.C. § 1447(c).

CC and DB removed this action based on 28 U.S.C. § 1332, which, as relevant here, provides district courts with diversity jurisdiction over civil actions between "citizens of different States." Id. § 1332(a)(1). Diversity jurisdiction exists "only if there is no plaintiff and no defendant who are citizens of the same State." Platinum-Montaur, 943 F.3d at 617 (citation omitted).

Under the doctrine of fraudulent joinder, a plaintiff "may not defeat diversity jurisdiction by improperly joining a

6

non-diverse defendant with no genuine connection to the matter." Brown v. Eli Lilly & Co., 654 F.3d 347, 356 (2d Cir. 2011). Thus, federal courts "overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." Id. (citation omitted). Defendants bear a "heavy burden" of proving fraudulent joinder and must do so "by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff." Id. (citation omitted).

It is only necessary to examine one of the four claims that the complaint asserts against Senatore. CC and DB have not made a sufficient showing that Papa's whistleblower retaliation claim cannot proceed against Senatore.

The whistleblower retaliation claim is brought under NYLL § 740, which prohibits an "employer" from retaliating against any employee who

> discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety[.]

NYLL § 740(2)(a). The NYLL broadly defines an "employer" as "any person, firm, partnership, institution, corporation, or association that employs one or more employees." Id. § 740(1)(b). In determining whether an individual is an

employer for purposes of the NYLL, courts apply an "economic reality" test.  See Senal v. Lynch, 190 N.Y.S.3d 352, 354 (1st Dep't 2023).  Under that test,

> the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the "economic reality" presented by the facts of each case.  Under the "economic reality" test, the relevant factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

Carver v. State, 26 N.Y.3d 272, 279 (2015) (citation omitted).

Papa alleges that he learned of illegal security breaches in DB's technology rooms, which contain a vast amount of private financial information.  The complaint contains facts suggesting that Senatore may be found to be Papa's employer within the meaning of the NYLL.  It alleges that Senatore was Papa's direct supervisor, controlled the IT services that Senatore's team delivered to DB, and could cause CC to hire and retain individual members of that team.  It also alleges specifically that, in retaliation for Papa reporting security breaches, Senatore took part in directing the termination of Papa's employment at CC.  CC and DB have not carried their "heavy burden" to show that there is "no possibility" that this claim will survive dismissal in New York state court "with all factual

8

and legal ambiguities resolved in favor of plaintiff." Brown, 654 F.3d at 356.

CC and DB also argue that the complaint does not adequately allege that Papa reasonably believed it was illegal for Jenny to be in the technology rooms. This argument fails. The complaint contains sufficient facts to allege that Papa held a reasonable belief of illegality at the time of his report, even if Papa did not know precisely what law was at issue.

CC and DB next argue that the fact that members of DB's security staff allowed Jenny into DB's technology rooms implies that there could not have been any criminal trespass or other illegal activity. But the complaint alleges that members of DB's security staff allowed Jenny to enter the technology rooms even though they were not supposed to do so, and pleads that the Employee and Jenny also knew Jenny was not permitted to enter the technology rooms.

More generally, CC and DB complain that Papa added Senatore as a defendant in a deliberate attempt to destroy diversity. That may well be true. Papa's counsel sent CC's counsel a draft complaint on April 1 that did not name Senatore as a defendant. Papa only added Senatore as a defendant after being informed by CC's counsel that CC is not headquartered in New Jersey, and therefore its presence in the action would not destroy

9

diversity. In the absence of a showing of fraudulent joinder, however, a plaintiff may add a defendant from his own state to "destroy diversity of citizenship." Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 35 (2025).

In sum, CC and DB have not carried their burden of showing that the whistleblower retaliation claim against Senatore cannot be asserted in New York state court and, as a result, CC and DB have not established that Senatore's joinder was fraudulent. Because Papa and Senatore are both residents of New Jersey, Senatore's presence in this action defeats diversity among the parties. As a result, this action will be remanded.

Finally, Papa moves for an award of costs and attorney's fees. An order remanding a case may, in a court's discretion, "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). This Court, in its discretion, will not require the payment of costs and fees under 28 U.S.C. § 1447(c).

10

## Conclusion

Papa's June 4 motion to remand this action is granted. Papa's request for costs and attorney's fees is denied. The Clerk of Court is directed to remand the action to the New York State Supreme Court, County of New York.

Dated:   New York, New York
         July 24, 2025

                                    _____
                                         DENISE COTE
                                    United States District Judge